PIAGET NOVELTY CO. v. HEADLEY et al.

(Circuit Court, S. D. New York. February 4, 1901.)

1. PATENTS—ASSIGNMENT—VALIDITY.
    Where a joint owner of a patent assigns his joint interest therein, and the assignment recites the consideration as paid, if it was not paid that fact would not invalidate the assignment as to those who should deal with the assignee on the faith of it.

2. SAME.
    Where an instrument recites that the subscriber assigns his entire interest in a "trunk-shaped bank" manufactured under certain patents, and writes at the same time to one having the right to manufacture under such patents on payment of a royalty that he must thereafter pay the royalty to the assignee named, it constitutes an assignment of the patent.

3. SAME—INFRINGEMENT.
    Headley's patent No. 379,534, for a toy registering savings bank, held infringed as to the third claim.

4. SAME.
    Headley's patent No. 384,523, for a coin receptacle and register, held not infringed as to its fifth claim.

In Equity.

Clifton V. Edwards, for plaintiff.
William Houston Kenyon, for defendants.

WHEELER, District Judge. This suit is brought upon two patents,—one, No. 379,534, dated March 13, 1888, and granted to the defendant Headley, assignor of one-half to William G. Horton, for a toy registering savings bank; and the other, No. 384,523, dated June 12, 1888, and granted to both, for a coin receptacle and register. J. Toler Sons & Co. made banks under these patents for the plaintiff, and paid royalties to Headley. He executed and delivered this instrument:

"Newark, N. J., June 7th, 1893.

"In consideration of the sum of two hundred & fifty dolls. to me in hand paid, I do hereby, this 7th day of June, 1893, assign my entire right, title,

& inst. to William G. Horton in the trunk-shaped bank mfgrd. under pats. No. 379,534, of Mch. 13, '88, and No. 384,523, of June 12, '88.

"Elwood Headley."

At the same time he wrote to J. Toler Sons & Co. that he had assigned, in the words of the assignment, to Horton, and added, "This will hereafter necessitate you paying the Piaget Co. royalty over to him instead of me."

Horton regularly assigned these and other patents to Henry V. Piaget November 2, 1899, and Piaget to the plaintiff January 2, 1900. This suit appears to have been commenced January 13, 1900. The defendants are partners, and they insist that no consideration was paid to Headley for the assignment to Horton, whereby it was inoperative, and that by its terms it does not cover the patents, but only the trunks, leaving a half interest in Headley, entitling him to use them. The assignment recites the consideration as paid. If it was not paid, it would be a subject of reckoning between them, and the fact that it was not would not invalidate the assignment as to those who should deal with Horton on faith in it, if it would as to Horton. That the patents were what was intended to be assigned is clear from Headley's testimony, where he says Horton "stated if I would turn over to him the two '88 patents," etc., that he "considered the two '88 patents worthless," and told Horton so, and made out the paper. And the letter to J. Toler Sons & Co. shows that what would be continuing to bring a royalty was intended, which would be the patents, as they were what "will hereafter necessitate you paying the." royalty to Horton. This was a practical and simultaneous construction of the instrument by Headley given out to J. Toler Sons & Co., connected by operations under the patents with the plaintiff. Headley was the grantor in the assignment written by him, and it is to be taken more strongly against him than against the grantee and his assigns. By the transaction he appears to have transferred the equitable title to his share of the patents, and to have deprived himself of the right to set it up in defense to a suit in equity upon the patents.

The only further question now to be considered relates to the construction and infringement of the claims relied upon. They are for, in the first patent:

"(3) The combination, with a money receptacle provided with an indicating dial or dials and mechanism, substantially as described, for indicating the exact money value of deposited coins, of a door or locking mechanism and interlocking devices whereby entrance to the receptacle can only be had after a definite amount of money has been deposited, substantially as set forth."

In the second:

"(5) In a registering apparatus, the combination of the dials comprising the plate, D, having the bent lugs, and the interiorly and exteriorly flanged rings, $D^1$, $D^2$, substantially as described."

The third claim of the first patent does not seem to be so much for a machine as for a manufacture. It is for a money receptacle having dials indicating the amount of coins deposited in it, and a door that cannot be opened till a definite amount has been deposited. The defendants' brief says:

"If the claim means the combination of any kind of indicating mechanism with a door and interlocking mechanism whereby the door is locked until the indicating mechanism completed its cycle of motion and is then unlocked, then defendants' device infringes."

This patent, in respect to this claim, is like Bell's second telephone patent. Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 778, 31 L. Ed. 863. The fifth claim was for:

"(5) The method of, and apparatus for, transmitting vocal or other sounds telegraphically, as herein described, by causing electrical undulations similar in form to the vibrations of the air accompanying the said vocal or other sounds, substantially as set forth."

Of this the court, through Mr. Chief Justice Waite, at page 572, 126 U. S., page 802, 8 Sup. Ct., and page 1002, 31 L. Ed., said:

"The patent itself is for the mechanical structure of an electric telephone to be used to produce the electrical action on which the first patent rests. The third claim is for the use in such instruments of a diaphragm made of a plate of iron or steel, or other material capable of inductive action; the fifth, of a permanent magnet, constructed as described, with a coil upon the end or ends nearest the place; the sixth, of a sounding box as described; the seventh, of a speaking or hearing tube, as described, for conveying the sounds; and the eighth, of a permanent magnet and plate combined. The claim is not for these several things in and of themselves, but for an electric telephone in the construction of which these things, or any of them, are used. Hence the fifth claim is not anticipated by the Schellen magnet, as was decided in the Molecular Case below. The patent is not for the magnet, but for the telephone, of which it forms but part."

Upon that authority, and the statement of the position of the defendants quoted, they appear to infringe this third claim. Of course, there could be new and patentable mechanism constituting the features of this manufacture. The fifth claim of the second patent now here in controversy is for such an improvement. The first patent showed mechanism which would bring the indicating dials correctly showing the contents into view, and holding the door till the required amount should be reached. This fifth claim is for different mechanism for that purpose, and the defendants' structure mechanism different from either. The defendants' mechanism appears to have a part, but not all, of the elements of the combination of that claim, and so, on familiar principles, does not appear to have the same combination. The claim is so special and narrow that there does not seem to be room for making out equivalents from the different arrangement. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053. In this view, that claim is not made to appear to be infringed. Decree for plaintiff on third claim of first patent and for defendants on fifth claim of the second patent.