PIAGET NOVELTY CO. v. HEADLEY et al.

(Circuit Court of Appeals, Second Circuit. May 8, 1901.)

No. 160.

1. PATENT—ASSIGNMENT OF INTEREST.

Where a joint owner of a patent assigned his joint interest therein, and the assignment recited a consideration paid, if it was not paid such fact would not invalidate the assignment as to those dealing with the assignee under it.

2. SAME—INFRINGEMENT.

The owner of a patent for a toy savings bank manufactured such banks for many years, improving the mechanism thereof, and taking out two additional patents, and from the beginning to the end of his dealings thereunder manufactured and sold the banks, with the date of the first patent, though in course of time improvements in the new patents were incorporated in the goods so manufactured and sold. Thereafter he gave

to a party to whom he had sold the manufactured goods a license to manufacture the same bank which he had previously sold them. It had always been marked with the date of the original patent, though it contained the improvements in the succeeding patents. *Held* that, complainant having acquired the right to manufacture under the original patent, the patentee could not claim that the banks he thereafter manufactured and sold with the improvements were not infringements as against complainant.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the circuit court, Southern district of New York. 107 Fed. 134. The suit was brought for alleged infringement of two patents, and the court held claim 3 of the earlier one to be infringed, and claim 5 of the later one not to be infringed. The defendants only appeal. The facts appear in the opinion.

W. H. Kenyon, for appellants.
Clifton V. Edwards, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The first patent is for a toy registering savings bank, and has for its object to provide a receptacle for money, which shall be secure against being opened except when a certain sum has been deposited therein, and which shall at all times visually indicate the exact sum or sums of money that have been deposited. The third claim reads:

"(3) The combination with a money receptacle provided with an indicating dial or dials and mechanism, substantially as described, for indicating the exact money value of deposited coins, of a door or locking mechanism and interlocking devices, whereby entrance to the receptacle can only be had after a definite amount of money has been deposited, substantially as set forth."

The defendant Headley was the inventor. The patent is No. 379,534, dated March 13, 1888 (application filed March 17, 1887), and is to Headley, assignor of one-half to William G. Horton. The complainant claims title under a conveyance of Headley to Horton, June 7, 1893, and a subsequent conveyance from Horton to itself. The conveyance to Horton is attacked on the ground that no consideration actually passed, and on the further ground that it does not specifically convey the patent. Upon this branch of the case it is sufficient to say that we entirely concur in the findings and conclusions of the judge who heard the cause at circuit. It seems not to be disputed that, if the claim be broadly construed, the pattern of toy bank now made by defendants' firm will be within its terms, but if it be narrowly construed there is no infringement. Being himself the inventor and applicant for the patent, defendant Headley, under well-settled principles, may not challenge its validity, and he does not undertake to do so. It will therefore be most convenient first to consider whether he is in like manner confined to such a construction of the claim as will preclude him, either generally or against the present complainant, from contending that the structure his firm now makes is not within the patent. Should this proposition be settled in the

affirmative, it will not be necessary to discuss the mechanics of the case.

The complainant is a corporation organized by one Piaget, as a successor to various firms composed of himself and one or more of his sons, which concerns since 1889 have been engaged in the sale of such banks. Between the Piagets and complainant there is such privity as will entitle complainant to avail of any estoppel touching the manufacture and sale of such banks inuring to the Piagets. Some time prior to 1888 Headley took up the subject of toy register-ing savings bank, and became acquainted with Horton, to whom he assigned the half of his first patent. The two became partners, and continued manufacturing such safes until 1892. During this time they made improvements in the mechanism of such banks, and took out two additional patents, No. 384,523, June 12, 1888, to Headley & Horton, and No. 450,071, April 7, 1891, to the same. In 1889 a contract was made between Headley & Horton and the Piagets, under which the former were to manufacture and the latter to have the ex-clusive sale of such banks. The business was at first highly profit-able, and during three years the Piagets paid Headley & Horton $160,000 for banks manufactured at a named price in excess of cost. Of this sum nearly $80,000 represented royalties, and during the same period the Piagets paid out $40,000 in advertising. By the close of 1891, however, the business had fallen off, Horton was in a sani-tarium, and Headley agreed in February, 1892, to rescind the con-tract, upon the Piagets purchasing at cost 20,000 banks which he then had in stock. This new arrangement was carried out, and the 20,000 banks bought, delivered, and paid for. Subsequently, having disposed of this stock, the Piagets, on March 3, 1893, took a license from Headley alone to manufacture and sell the banks on a royalty, and did manufacture and sell such banks, paying the royalty to him until June 7, 1893. From the very beginning to the end of these transactions the banks were marked with the words and figures, "Pat. Mch. 15, '88," "Pat. June 12, '88," cast in the bottom plate, and as the years went on, and improvements were made, they were in-corporated in the new goods manufactured and sold. The mechan-ism described in the patent of 1891 was incorporated in banks made after it was devised, and after it was patented, and which had the same patent markings. The banks claimed in this suit to infringe are precisely the same as those manufactured by Headley & Horton subsequent to the patent of 1891.

We find, therefore, that during the existence of the contract of 1889 Headley made banks precisely like those now complained of, marked them "Patented March 13, 1888," and sold them to complain-ant's predecessor at a price per bank which included, not only the cost of production, but also a considerable royalty; that, upon the abrogation of that contract, he sold to the same party a considerable number of the same banks, stamped in the same way, and received the price; that he gave to the same party a license to go on and manu-facture the same bank which had been theretofore made by his firm, and received royalty on banks manufactured under that license. We are satisfied that now, when complainant has obtained title to this

patent of March 13, 1888, it does not lie in the mouth of Headley to assert, as against complainant, that the banks he used to stamp and sell as being within said patent are not infringements. The decree of the circuit court is affirmed, with costs.