PIAGET NOVELTY CO. v. HEADLEY et al.

(Circuit Court, S. D. New York. August 1, 1903.)

1. PATENTS—INFRINGEMENT—PROFITS RECOVERABLE.
    A manufacturer of an infringing article is liable for the entire net profits derived from its sale, where the evidence shows that its salability was primarily due to the patented feature.

2. SAME—ASCERTAINING NET PROFITS—EXPENSES TO BE DEDUCTED.
    In estimating the profits realized by a defendant from the manufacture and sale of an infringing article, for which it is accountable, it is entitled to be allowed for office and factory rental and for labor in producing and selling the article, but not for insurance, or for legal services or expenses in defending a prior suit, although successful in such defense.

In Equity. On exceptions to master's report.

Clifton V. Edwards, for complainant.

William Houston Kenyon and George W. Mills, Jr., for defendants.

HAZEL, District Judge. This suit was brought to establish infringement by defendants of two United States letters patent—No. 379,534, dated March 13, 1888, and granted to Elwood Headley, assignor of one-half to William G. Horton, and No. 384,523, dated June 12, 1888, of which the defendant Headley and one Horton were patentees. The patents are now owned by the complainant. The earlier patent is for a toy registering savings bank, and the later for a coin receptacle and regulating register. At final hearing brought on before Judge Wheeler the third claim of the earlier patent was sustained, and defendants held infringers, while as to the later the complaint was dismissed. A reference was directed to a master to ascertain and report the profits and gains made by the defendants. An appeal taken from the interlocutory decree to the Circuit Court of Appeals resulted in affirmance of the decision of the Circuit Court. 108 Fed. 870. The case now comes up for hearing upon exceptions filed to the master's report, which finds that the net profits to the defendants resulting from the infringement amounted to $1,658.15. I have carefully examined the report, the evidence, and authorities upon which it is based, with a view of ascertaining whether the master erred in his application of the rules of law which may properly be invoked in a case where the profits, gains, and advantages are recoverable from an infringer. The master's report shows careful and diligent preparation. The evidence is succinctly set forth in his opinion, and with sufficient detail. I think the propositions of law justifying a recovery of the profits by the complainant are correctly stated and applied. I quite agree with the master in view of the decision of the Circuit Court, reported in 107 Fed. 134 (affirmed on appeal, 108 Fed. 870, 48 C. C. A. 116), holding the patent in suit to be a pioneer patent for a new article of manufacture, and deciding that claim 3 of the patent covers in its entirety all toy banks containing a registering device, that the complainant is entitled to recover the gains and profits derived by the defendants from

¶ 1. See Patents, vol. 38, Cent. Dig. § 572.
    123 F.—57

their manufacture and sale of banks containing the patented mechanism. The principal objection to the confirmation of the report is whether the patentee is entitled to recover for profits upon sale of the bank in its entirety. The claim is made that the toy bank was marketable only because of its trunk shape, an unpatentable feature; but I am well satisfied that the defendants were not entitled, because of such shape, to an apportionment of the profits. The controlling reasons stated by the master for refusing such apportionment of the profits on the theory contended for by defendants are amply justified by the proofs. The value of the infringing banks and their salability were undoubtedly due to the registering device attached to them, irrespective of their shape. The following authorities are controlling as to the recovery by a complainant of profits earned by an infringer, where it appears that the manufactured article derived its entire value from the use of the invention: Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987; Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011; Crosby Steam Gauge & Valve Co. v. Consolidated Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809; Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250. This case, therefore, is quite distinguishable from a class of cases to which Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, belongs, where the patent is for an improvement merely, and where the profits must be apportioned or separated with a view of ascertaining the damages sustained by a patentee between the patented feature and the unpatented feature. Here, as already remarked, the invention enhanced the value of the bank, and was the primary cause for its extensive sale. The master was entirely within the rule in allowing to the defendants the items for labor, rent of office, and rent of factory during the time of infringement (Rubber Company v. Goodyear, 9 Wall. 788, 19 L. Ed. 566) and in disallowing defendants' claims for insurance, legal services, fees, and expenses for printing in defending the suit brought by complainant's predecessor in the state court to establish his right to the exclusive use of the trunk-shaped banks (National Folding-Box & Paper Co. v. Dayton Paper-Novelty Co. [C. C.] 95 Fed. 991; Philp et al. v. Nock, 17 Wall. 460, 21 L. Ed. 679; Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54). That the defendants here succeeded in their contention in the state court is immaterial. The master found that other items of expenditures made by defendants in the manufacture and sale of infringing banks to reduce the profits were either insufficient or unconvincing. No reason is apparent why this conclusion of fact by the master should be disturbed.

The exceptions are respectively overruled. There should be a decree for the complainant confirming the report of the master, with interest and costs.